The next case, actually the last case for oral argument, is Pekin Insurance Company v. Kiefer Landscaping. Pekin Insurance Company v. Kiefer Landscaping, LLC Good afternoon, Your Honors. May it please the Court of Counsel. My name is Peter Sergelis. I'm the pretzel and stauffer of Chicago. I can't hear you. Sorry. My name is Peter Sergelis, pretzel and stauffer of Chicago, on behalf of the Pekin Insurance Company, here as the plaintiff appellant. Your Honors, this case is relatively straightforward. Usually when a lawyer says that to judges, they usually cringe. At least the one I used to work for did. But the facts really are relatively straightforward. Pekin issued a general liability policy to Mr. Kiefer and his landscaping company. Michael and Michelle Bruin are the plaintiffs that the court sued underlying this insurance coverage action. That does not amplify. It just records. Just speak up. The Bruins hired Mr. Kiefer and his landscaping company, among other companies and contractors, to build what I'll call today, for the purpose of this argument, a backyard construction project. Mr. Kiefer's portion of that construction project was the building of a retaining wall that was intended to hold off the rest of the project, which included a pool and a pool deck, etc. Shortly after the construction of that retaining wall, the complaint filed by the Bruins, which can be found at 486 of the Record on Appeal, the Bruins allege that that retaining wall began to part, tumble, and collapse, causing damage to the retaining wall itself and the other parts of the backyard project, including the pool and pool deck. Besides allegations that Mr. Kiefer warranted that the wall would be sufficient for that purpose, the Bruins also allege that Mr. Kiefer utilized what's called an Allen block to construct the wall. Allen block is a manufactured stone made by a company in Decatur, Illinois. The plaintiffs in the tort suit attached to their complaint is Exhibit B, and Exhibit B is page 511 of the Record on Appeal. Attached to Exhibit B is an installation guide that's issued by the company that manufactures the Allen stone. According to that installation guide, and actually according to the very allegations of the tort complaint, any contractor utilizing Allen stone is required to hire a local engineer and have soils tested upon which the wall will be constructed. The complaint further alleges that Mr. Kiefer did not utilize the services of a local engineer, nor did he test the soil upon which he built the retaining wall. The Bruins lodged a complaint against Mr. Kiefer, his landscaping company, and the other contractors that participated in the building of this backyard. Counts 1 through 6 are directed to Mr. Kiefer and his company. The causes of action are breach of contract, breach of the warranty of habitability, consumer fraud, and filing negligence. Mr. Kiefer tendered that defense of that complaint to Pekin. Pekin accepted, subject to reservation, and is providing Mr. Kiefer purpose counsel, Mr. Ray, who's here today on behalf of Mr. Kiefer. Pekin filed a dex suit. He eventually moved for summary judgment. On September 19, 2012, the trial court denied Pekin's motion for summary judgment, and although there was no cross motion on file, affirmatively found that Pekin owed Kiefer a duty to defend. That order effectively resolved all controversy between Pekin and the defendants here. There were no counterclaims on file, there were no affirmative defenses, and Pekin only sought a determination as to a suit to defend. Did not mention indemnity. In that order of September 19, 2012, the trial court reasoned that since the collapse of the retaining wall caused damage to other property, that is the pool deck, the pool, mature landscaping, etc., that there was indeed coverage. That is, he determined that because there was damage to other property, that constituted an occurrence. Before I address the merits of that order, a concern has arisen as to this court's jurisdiction. Shortly after the September 19, 2012 order, Pekin filed a motion for a 304A finding. The idea being that the denial of the motion for summary judgment is infinal and appealable. Due to scheduling difficulties, Pekin, on October 19, 2012, mailed to the Circuit Court of Effingham County a notice of appeal in order to protect its rights. Judge Hardigan, who heard this case, it's my understanding that he writes circuits. He sits both in Effingham County and Shelby County. It was rather difficult to get a hold of the judge, and in order to protect our rights to an appeal, he filed that notice of appeal. This court has since dismissed that appeal. Kiefer, in raising the argument that – I'll back up for a second. The motion for 304A finding was eventually heard by Judge Hardigan in December of 2012. He granted Pekin's motion, stating affirmatively that there was no reason to delay or delay enforcement of the judgment or to delay appeal, and Pekin appealed that ruling sometime 16 days thereafter. In arguing that this court does not have jurisdiction over this appeal, Mr. Kiefer, although agreeing with the court that the September 19, 2012 order was not final and appealable, contends that Pekin's first notice of appeal divested the trial court of jurisdiction. And to refute that argument, in our reply brief, we have cited two Supreme Court cases that state the black-letter law that a litigant cannot otherwise deprive the trial court of jurisdiction if the appeal is from a non-final order. And for that proposition, we cite in re marriage at best, that is at 228 Hill 2nd, 107. The pinpoint site is 113 to 115. And in re state of French, 166 Hill 2nd, 95, with pinpoint sites 101 to 104. If there are no questions as to this court's jurisdiction, I'll proceed to the merits. Go ahead. Okay. The trial court's September 19, 2012 order here needs to be reversed for the following reason. The court simply determined that there was coverage and found that there was an occurrence because there was other property damage. The court did not engage in the analysis laid out by this court in State Farm v. Tillerson. State Farm v. Tillerson, this court clearly delineated that a trial court should only reach the concept of other property damage if it determines that there is an occurrence. The trial court here skipped that step. And Tillerson, this court's case, so I probably don't want to cite it, is 334 Bill F. 3rd at 404. And for purposes of this argument, he can look and see that there is other property damage. Our argument on appeal is simply that there is no occurrence. I expect my opponent, Mr. Ray, to, when he gets his chance up here, and I'll apologize to the court in advance, I misapprehended his citation to Troveillon as being a citation to this court's Bonnie Ray case. In any event, Troveillon, which is at 130 Bill F. 3rd, 694, Mr. Ray will get up here and tell you that there was coverage in that case because the contractor that built the home damaged kitchen flooring that wasn't supplied by him. That is not the basis of the court's holding. In fact, in that case, the insurance company conceded for purposes of that case that there was an occurrence and chose to litigate only certain exclusions that were in the policy. But even then, that's not even the court's holding. The court's holding is that the insurance company waived any coverage defenses because it began to provide a defense that was insured, defended for some time, actually got a complaint dismissed, and then later on determined that it owed no duty to defend, withdrew defense without having filed the dexter. So Troveillon is entirely based on stock. In no way, shape, or form found that there was an occurrence. We've cited a litany of cases in our briefs showing that the concepts of occurrence and property damage are different and should be analyzed separately. There are a few I want to touch on today. The first is Viking Construction Company. That's a 1st District case, 2005. That is at 385 Mill Ave., 3rd and 34th. That case is fairly similar to this case in the sense that a masonry wall there collapsed due to insufficient bracing. At pages 41, 42, and 43 of that case, the court analyzes occurrence and property damage separately. Justice Burke, who now sits on the Supreme Court, actually laid out three different frameworks that courts should apply to these types of cases. Not one of those three approaches is the one taken by the trial court here and advocated by Kiefer. In fact, just two pages prior to citing the three approaches, Justice Burke notes that it is only when an occurrence has been established should a court go on to consider whether or not there's property damage. In West Bend, another 1st District case, 2010. That can be found at 401 Mill Ave., 3rd, 857. The father and son's construction company was accused of committing fraud. And, in fact, the Illinois Attorney General filed a civil suit against that construction company. There, the court found, number one, no occurrence. Number two, no property damage. And number three, that an exclusion applied in any of them. All three things were considered separately. I'm likely to butcher the pronunciation of this case, but Eichelkraut. It's a 1st District case, 1988, 166 Illinois Ave., 3rd, 550. Kiefer cites it for the proposition that that case found that there was no occurrence because damage due to a roof leak didn't damage any but the building that the contractor himself constructed. But that's not what the court says. The court there found no occurrence because the leak slowly damaged the building. In fact, the leak was probably leaking for 16 years, likely before the inception of the policy in that case. Hence, there's no occurrence. If something doesn't happen by accident, it's not an occurrence. I want to touch on Diamond State v. Chester Jensen. That case involved an HVAC system installed in a state of Illinois building in Chicago. And it found no occurrence because the HVAC system was installed improperly. But what's more interesting about that case is that it actually goes on to discuss Wilkin, the Illinois Supreme Court case, 144, Ill. 2nd, 64. Which found that there was an occurrence caused by insulation containing asbestos when that asbestos harmed the building's occupants. What Diamond State says about Wilkin and explains its holding is that the insulation in the walls of Wilkin did not fail on its primary purpose. What happened is that the personal injury triggering the insurance policy provisions was holding and splintering and coincidental to the insulation's primary purpose. Here, the wall was expressly warranted to be sufficient to hold up the weight of this project. It failed in its primary purpose. There are some cases that appear to call the analysis that they are conducting an analysis into occurrence. Yet, it seems that they're really analyzing the concept of property damage. And one of those cases is Monticello. Another one of those cases is Piedmont v. Martha, which my point will get up here in sight. What I would submit to this court is that it adheres to the analysis that it conducted in Tillerson. When Martha determined that an occurrence resulted simply because the pipe burst and damaged something other than the pipes, what it did was really engage in an analysis of property damage twice. It first starts off saying there's property damage because the shortcoming damaged something other than the things supplied by the contractor. And then it goes on to say it's also an occurrence because the shortcoming went on to cause damage to other property. It's doing the analysis twice. The elements are different. There has to be an occurrence and there has to be property damage. Pekin concedes that there's property damage, but there is no occurrence here because the tort complaint simply alleges that either the construction techniques were insufficient or that Kiefer failed to deliver what he promised in his contract and that he failed to basically utilize Allen Block as it was meant to be utilized. If there are no questions, I'll just wait for my rebuttal. I don't believe there are. Thank you, counsel. Counsel? Good afternoon, Your Honor. This is Greg Gray for Kiefer Landscaping and Chet Kiefer. This fascinating topic, do I have your attention yet? This actually is, I think, an interesting case in the insurance world. And I think it's because maybe we've reached a point where we need to confront head-on something that's been danced around by many appellate courts. Do you look at occurrence to make a decision or look at property damage to make a decision or how do you go when you have these construction projects that something goes wrong? I think there's an answer to this that's never been articulated that I want to offer to you. And if you look at the Viking case by Justice Berg, the foundation for what I'm going to offer to you becomes apparent. In that wall collapse case, there was a claim of personal injury. And in that case, the insurer accepted the defense of the personal injury claim and settled it. The contractor argued in the case brought by the owner against the contractor, wait a minute, there has to be an occurrence. There is a personal injury. There is an occurrence. How could there be an occurrence here for personal injury in that case and not be an occurrence here for property damage? It's the same event. And that really was a correct assessment. But notwithstanding my suggestion, Justice Berg in a footnote said, well, this argument is without merit. Clearly the causes of action are different. The causes of action may be different, but coverage under a policy that uses the same terminology, the same definition for occurrence for personal injury and property damage has to be the same. Now, how do you do that? I think the answer is this. The case by the owner against Viking was solely to repair and replace the defective construction. If you look at all of these other cases where there's no coverage because there's no either occurrence or property damage, it's because the owner is looking for repair or replacement. And so if you back up and say, to use the word in the brief filed by Pekin, these should be conflated. I suggest to you, yes, they have to be. Because until you determine what the claim is for by way of type of damage, you cannot decide if there's an occurrence. If the type of damage claimed is personal injury, there's an occurrence. It's obvious. It's obvious to Justice Berg. I think it's obvious to all of us. So now let's talk only about property damage. If you look at property damage as necessarily having to be distinguished between repair or replacement, loss of the bargain, the economic loss of the thing not being built the way it was supposed to be built versus damage to something in addition to what the insurer worked on, you have your dichotomy and you have your explanation. And I really offer to you that is what this case is about. And the way you apply the rule, I suggest, is you take account of some basic principles of insurance law first. If there's coverage for anything for purposes of the duty to defend, which is all we're talking about, there's duty to defend everything. So if you can't find damage to work other than the insurer's work and the circuit judge pointed out in September 19 order, you have now found something that's covered, and now you've triggered the duty to defend. And I think that's where we come out here. Whether you look at the Trevelyan case involving floor damage, whether you look at the Wilfrid's case that involved not a claim for damage to cars, but had there been, the court says Wilfrid's might have settled on something, then there would be coverage. Had there been a claim for some other property damage than what the insurer worked on, all the cases, I think, are uniform in saying there would be coverage. All the cases that say there isn't coverage are talking about cases just like State Farm v. Tillerton, the one where they built the garage or the addition of the house over the cistern. Very careful review of that opinion. Viking, the owner's only looking to repair and replace, no coverage. That's not what we have here. The facts here, as alleged by the plaintiff, by the way contested vigorously by the defense on my hand, is that in 2005, Home Construction, once a co-defendant below, entered into an agreement to build a house. There's an exhibit attached to the complaint in the underlying case that says that house will be completed in September of 2006, in August of 2006. Distinct in time, the contracts entered into the oral contract between a landscaper and the owners to build a retaining wall. In earlier 2006, a different contractor comes in to build a swimming pool. The important point here is that these are construction functions, projects, that are distinct in time and they're distinct in location. We have a house, we have a swimming pool, we have a retaining wall. They're physically not attached. They're contractually not attached. If you look at the Viking case, again, a very important case, I think it's really the most important reading if you happen to be looking at the military law, because it's so comprehensive. But in the Viking case, one of the contentions made had to do with the fact that the masonry wall that collapsed there was built by a subcontractor. And the answer was, does it matter, general contractor, because it was only to repair and replace, and the fact that a subcontractor was the one that built it, doesn't relieve you the general contractor actually, to be correct, Viking was a construction manager. But in any event, it had authority over the whole project. There's no contention that Kiefer had any authority over the swimming pool or the home. There's no contention that either of the others had authority over any of the others. So you end up with distinct contractual and physical differences between these projects. And that's why damage to one of the other guys' projects is property damage, within the meaning of the idea that we don't want general liability policies, comprehensive general liability policies, to serve as performance bonds. If you read these opinions about what's an occurrence, an actual probable sequence of events type of thing, it's virtually IPI approximate cause, but it also doesn't ring true with anything else other than construction jobs. The natural probable consequence of running a red light is you're going to be in a crash. The natural consequence of leaving a banana on the grocery store floor is somebody's going to slip and fall. Why aren't those non-occurrences? Just the same concept. The answer comes back to, we're going to set aside for purposes of insurance coverage, comprehensive general liability policies from being performance bonds. We're not going to let the contractor use insurance to repair and replace bad work. And that's not what I'm asking here. I'm only asking to address whether there's some coverage for some of the claims. The circuit judge had it right. Now, I want to talk briefly about jurisdiction. Not sure how convinced I am about it, but let me say this. The ruling by the judge on September 19, 2012 was a formal order. He did not enter judgment. The clerk did not enter judgment. So on Rules of 72, neither that order nor the doc order that says it was filed entered judgment. There's no final judgment, period. There's also nothing else left under the pleadings to address. So it's not a judgment, so it's not appealable. They took an appeal. What does that do to the trial court's jurisdiction? Now they come in and say, we want a 304A finding. Well, 304 only applies to final judgments. We don't have one yet. On less than all of the issues or all of the parties. We don't have any other issues. We don't have any other parties. It's simply not a 304A case at any point in time. So if it's anything, it's a 301 case. I'm not sure, and I think you have the obligation to address whether you have jurisdiction. I'm not sure that the December 11, 2012 docket order by the trial judge constitutes the entry of judgment. Where is 272 complied with? If you read the committee comments rule 272, it says we have this rule so we can always figure out when judgments actually enter. I don't think it's happened yet. And if it hasn't, then no appeal files are filed. So that's that issue for whatever they consider to be the issue. I think that's the substance of what I wanted to address. If you have any questions, we can try to answer them. I don't think so. Thank you. I do briefly want to address two things. One, rule 272, and I think it's a creative argument. Rule 272 is a rule of being able to pinpoint when a judgment is appealable because the Illinois Supreme Court allows attorneys to fill out formal court for a judge. And that rule says that when an attorney fills it out, it's not yet a judgment until the judge signs it. We don't have that problem here. The judge entered the order. I didn't fill out an order. Mr. Ray didn't fill out an order. That's what 272 deals with. I mean, frankly, I'm dumbfounded by how 272 plays into this case. And the other thing I'll say about anything that is property damage is an occurrence. Frankly, that's like saying a contractor could intend to harm somebody else's property, and that's an occurrence. We know that's not the case. So that's it. If there's anything else, go ahead. I don't think so. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel, and we will take this case under advisement. There are no further oral arguments scheduled before the court, so we are adjourned.